UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOHN CSOKA & JUDITH CSOKA

    Plaintiffs

v.

BANK OF AMERICA, N.A.;
JOHN DOE

    Defendants

Civil No. 1:15-cv-00876-GBL-IDD

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
BANK OF AMERICA'S MOTION TO DISMISS COMPLAINT**

Plaintiffs John and Judith Csoka ("the Csokas") respectfully submit this memorandum in opposition to the September 1, 2015 motion to dismiss complaint of Defendant Bank of America, N.A. ("BANA").

## INTRODUCTION

This is a straightforward action to compel a creditor to unwind a previously rescinded transaction. Rescission in this case occurred *not* as a consequence of judicial action, but as a consequence of statutory law that alters the relevant common law practice. This action is therefore akin to enforcing a standing court order, which, while having the force of law, was disobeyed and violated by one of the parties, so that the violating party must now be compelled to change its position to conform to said order. The causes of action set forth in the Complaint are based, in part, in a federal statute known as the Truth In Lending Act ("TILA").

## ALLEGED FACTS TAKEN AS TRUE

On February 23, 2009, the Csokas entered into a consumer mortgage loan refinance transaction ("Loan") with Coutnrywide Bank, FSB ("Countrywide"). Compl. ¶¶ ¶¶ 6-7. BANA

was the servicer of the Loan at the time of the events giving rise to Plaintiffs' claims. Compl. ¶¶ ¶ 9. On or about June 30, 2011, the Csokas rescinded the Loan as provided in 15 U.S.C. § 1635, by sending BANA a notice to that effect. Compl. ¶¶ ¶ 14. On September 16, 2011, BANA acknowledged receipt of the Csoka's rescission notice. Compl. ¶¶ ¶ 15. Upon the dispatch of the Csokas' timely rescission notice, the security interest given by the Csokas to Countrywide as part of the Loan transaction became void. Compl. ¶¶ ¶ 16. BANA's receipt of said notice triggered the statutory obligations of Coutrywide and any of its successors. Compl. ¶¶ ¶¶ 17-18.

Upon Countriwide's (and its successor John Doe's) failure to discharge its statutory obligations under 15 U.S.C. § 1635(b) (whether through its agent-servicer BANA or otherwise) and in light of the U.S. Supreme Court's latest affirmance of the statute's plain and unequivocal terms in *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 190 L. Ed. 2d 650, at *4 (2015),[1] the Csokas brought the instant action to compel Defendants[2] to discharge their statutory obligations.

BANA has moved to dismiss the Complaint, relying entirely on pre-*Jesinoski* case law, even though it is an elementary proposition of jurisprudence that those cases, to the extend that they contradict or are in conflict with *Jesinoski*, are no longer good law. At the same time, BANA has not been able to show (nor could it) how *Jesinoski* itself supports its outdated position.

---

[1] In its memorandum, BANA repeatedly bemoans the fact that the Csokas have not cited *Jasinoski* in their Complaint, yet fails to cite (nor could it) any law or rule that would require the Csokas to do so.

[2] BANA's September 1, 2015 motion and memorandum erroneously omit the unknown Defendant John Doe. The parties have not yet engaged in discovery, and neither have the Csokas otherwise been notified of, or been able to determine, the identity of John Doe.

I. **STANDARD OF REVIEW**

On a 12(b)(6) motion to dismiss, courts "construe a complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true." *FDIC v. Bd. of Supervs.*, 2012 U.S. Dist. LEXIS 102132, *2 (E.D. Va. July 23, 2012) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The complaint may be dismissed only "when 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Lawson v. Miles*, 2012 U.S. Dist. LEXIS 110982, *5-6 (E.D. Va. Aug. 6, 2012) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984)). To survive a motion to dismiss, a complaint need merely "contain sufficient factual matter," which, accepted as true, is sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Lawson*, 2012, U.S. Dist. LEXIS at *5 (quoting *Iqbal*, 556 U.S. at 663), and only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678. In the instant case, each Count in the Complaint more than satisfies the above standard.

II. **Because the Csokas Timely Exercised Their Statutory Right to Rescind, the Underlying Deed of Trust is Void and the Loan is Rescinded.**

Contract rescission under TILA is a statutory right that levels the playing field between financial institutions and consumers and serves, *inter alia*, "to protect the consumer against inaccurate and unfair credit billing." *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct.

790, 190 L. Ed. 2d 650, at *4 (2015) (quoting 15 U.S.C. § 1601(a)).[3] TILA is broadly construed in favor of consumers. *See, e.g.*, *Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 847-48 (8th Cir. 2009). Under the unambiguous statutory scheme and its unequivocal terms, a borrower's mailed notice of rescission results in "a unilaterally rescinded transaction" in which TILA "modifies common-law practice" and "disclaims the common-law condition precedent to rescission at law that the borrower tender the proceeds received under the transaction." *Jesinoski*, 135 S. Ct. at *6-7 (citing 15 U.S.C. § 1635(b)).

> Indeed, TILA provides that
>
> the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of . . . the material disclosures required under this subchapter, whichever is later, by notifying the creditor . . . of his intention to do so.

15 U.S.C. § 1635(a). Notably, this provision "nowhere suggests a distinction between disputed and undisputed rescissions." *Jesinoski*, 135 S. Ct. at *5. As a consequence, the U.S. Supreme Court has now reaffirmed that § 1635(a) "explains in unequivocal terms," *id.* at *4-5, "that a borrower need only provide written notice to a lender in order to exercise his right to rescind," *id.* at *7. As a result, "**rescission is effected when the borrower notifies the creditor**." *Id.* at *5 (emphasis added).

BANA's arguments that more than mailing a notice was required to rescind the Loan are based on pre-*Jesinoski* case law[4] and are again contrary to the plain language of the statute:

---

[3] *Cf.* Note, Truth-in-Lending: Judicial Modification of the Right of Rescission, 1974 Duke L.J. 1227, 1234 (1974) (rescission under § 1635 "places the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission").

[4] All the cases relied upon by BANA (except for *Wane v. Loan Corp.*, No. 8:11-CV-2126-T-33AEP, 2015 WL 5021632, at *5 (M.D. Fla. Aug. 25, 2015)) pre-date *Jesinoski* and, to the extent that they are in conflict with it, are no longer good law. *See, e.g.*, *Sons of Confederate Veterans, Inc. v. Holcomb*, No. 14-cv-01297, at *7 (W.D. Va. March 23, 2015). *Wane* is inapplicable, as it involved an involuntary assignee, FDIC, "immunized from liability" under

"**When an obligor exercises his right to rescind, . . . any security interest given by the obligor . . . becomes void upon such a rescission**." 15 U.S.C. § 1635(b) (emphasis added). Quite simply, no court action is necessary to effect rescission because "rescission is effected when the borrower notifies the creditor," *Jesinoski*, 135 S. Ct. at *5, which results in "a <u>unilaterally rescinded</u> transaction," *id.* at *7 (emphasis added). As the Supreme Court further explained, "the fact that [rescission] can be a consequence of judicial action . . . in no way suggests that it can *only* follow from such action." *Id.*

Therefore, BANA's argument that the Csokas must somehow allege more than they did in the Complaint, "stating what steps Plaintiffs took in order to enforce their alleged right of rescission prior to filing the instant action" (Mem. at 6), is contrary to the plain language of Section 1635(b) and contrary to *Jesinoski*. In spite of BANA's crafty argument, TILA and *Jesinoski* are both clear that mailing a notice is all that is legally required to change the status of a transaction to "rescinded" and obtain a "unilaterally rescinded transaction." *Id.* at *7. U.S. Supreme Court's "unilaterally rescinded transaction" language simply tracks TILA's express language that, "[w]hen an obligor exercises his right to rescind . . ., any security interest given by the obligor . . . becomes void upon such a rescission." 15 U.S.C. § 1635(b).

The subject of this suit, therefore, is to compel BANA and its principal John Doe to take steps to unwind an already rescinded transaction, because "§ 1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction". *Jesinoski*, 135 S. Ct. at *7. Upon the Csokas' timely and effected rescission of the Loan, the only matter to be addressed in a judicial action is to compel BANA (and its principal John Doe) to take steps to unwind an

---

TILA's §1641. *Id.* at *5; *see also Wane v. Loan Corp.*, No. 8:11-CV-2126-T-33AEP (M.D. Fla. Apr. 27, 2012) (explaining in detail how an involuntary assignee such as the FDIC is immunized from any TILA liability by §1641).

already rescinded transaction using the statutory process that "modifies common-law practice." *Id.*

Because rescission has already occurred, the Csokas are <u>not</u> asking this Court to "award rescission" (as mentioned in section 1635(g) for example) or make rescission in this case "a consequence of judicial action," 135 S. Ct. at *6. Compl. ¶¶ ¶ 41 (no request to award rescission). As the *Jesinoski* court explained, "the fact that [rescission] can be a consequence of judicial action . . . in no way suggests that it can *only* follow from such action." *Id.* Even though TILA mentions "that a court may . . . award rescission and thereby relieve the borrower of his financial obligation to the lender," such mention "has no bearing upon whether and how borrower-rescission under §1635(a) may occur." *Id.* Instead, as *Jesinoski* decided and as TILA provided all along, borrower-rescission under §1635(a) occurs not only when a court orders it, but also upon the mailing of the borrower's notice of rescission ("unilaterally rescinded transaction"). *Jesinoski*, 135 S. Ct. at *5 ("rescission is effected when the borrower notifies"), *7. This is what occurred in the instant case – unilateral borrower-rescission under §1635(a) as a result of a timely mailing of a notice of rescission. Pursuant to statutory law and *Jesinoski*, the security interest is "void," 15 U.S.C. § 1635(b), resulting in an already "rescinded transaction," 135 S. Ct. at *7. Therefore, the Loan has been rescinded nonjudicially, and no judicial action was required for that rescission to occur. *Id.*

### III. BANA and John Doe must Unwind the Rescinded Transaction by Returning Money and Recording the Termination of the Security Interest.

The steps for unwinding an already rescinded transaction are set forth in section 1635(b):

> Within 20 days after receipt of a notice of rescission, the creditor **shall return to the obligor any money** or property given as earnest money, downpayment, or otherwise, and **shall take any action necessary or appropriate to reflect the termination of any security interest** created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it.

> Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor . . . .

15 U.S.C. § 1635(b). Thus, under the plain language of the statute, BANA and John Doe must (1) return to the Csokas all of the moneys paid by the Csokas to date in connection with the loan and the original promissory note, and (2) record the termination of the security interest. *Id.*; *see also Jesinoski*, 135 S. Ct. at *6 ("the Act disclaims the common-law condition precedent to rescission at law that the borrower tender the proceeds received under the transaction. 15 U. S. C. §1635(b)"). It is these steps that the Csokas seek to compel the Defendants to do by the instant action, any red herrings by BANA (such as judicial award of rescission) notwithstanding. While not necessary to rescind the Loan, judicial action in this case <u>is</u> necessary to compel the creditor to discharge its statutory obligations triggered by and upon said nonjudicial rescission.[5]

### IV. <u>BANA and John Doe are barred from raising any merits-related defenses.</u>

BANA also argues that "Plaintiffs have not alleged any violations of the TILA disclosure provisions that give rise to the right of rescission." Mem. at 7. Unfortunately for BANA, the time to challenge such allegations or non-allegations has passed, and the Csokas' "reasons" for rescinding the Loan are no longer relevant. Just as a borrower cannot undo a non-judicial foreclosure sale by disagreeing with what occurred and arguing that the creditor must first prove "standing" to foreclose, a creditor cannot undo an effected rescission by disagreeing with what occurred under §1635 and demanding that a borrower prove reasons for the already effected rescission, after the time to challenge it has passed.

The statutory scheme is clear. Upon the borrower's mailing of a rescission notice, the security interest "becomes void upon such a rescission" resulting in a "unilaterally rescinded

---

[5] Because TILA rescission can occur apart from any judicial action, *Jesinoski*, 135 S. Ct. at *7, i.e., nonjudicially, it may be considered a borrower's counterpart of nonjudicial foreclosure.

transaction," 135 S. Ct. at *7, and "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money . . ., and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). "To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice." 135 S. Ct. at *7.

Once the Csokas sent their notice of rescission to BANA on June 30, 2011, BANA was faced with its statutory obligations to return to the Csokas all money received and to take steps reflecting the termination of the security interest. Compl. ¶¶ ¶ 15. If BANA believed that it was not obligated to act as prescribed by the statute, it should have sought a judicial determination of its statutory duties by filing suit. *See*, *e.g.*, *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 817 (4th Cir.2007) (creditor filed suit); *see also Decision One Mortgage Co. v. Fraley*, 2000 WL 1889700 (6th Cir. 2000); *Aquino v. Public Fin. Consumer Discount Co.*, 606 F. Supp. 504 (E.D. Pa 1985). Instead, BANA failed to act within 20 days at all. Compl. ¶¶ ¶ 15.

If BANA believed that the Csokas' notice was improper, their cause of action accrued upon receipt of that notice, and they had 20 days to pursue that cause of action. 15 U.S.C. § 1635(b). However, BANA and its principal did nothing, and under the plain language of the statute, they did so at their own peril. *Id.*

While borrowers may sometimes make rescission claims on a mistaken basis, lenders also may, and do, deny borrower's claims without legal right (as was the case here) or take advantage of uninformed consumers. TILA's status as "remedial legislation, to be construed broadly in favor of consumers," *Rand Corp.*, 559 F.3d at 845, dictates which problem takes precedence.[6]

---

[6] BANA's actions of disregarding the Csokas' notice also thwart congressional intent to make rescission private and nonjudicial. For instance, the First Circuit has pointed out that the

TILA's text demonstrates Congress' discretionary choice that it is consumers that needed special protection. To the extent that BANA or any other party is unhappy with that result, their remedy lies with the legislature, not the courts. *See*, *e.g.*, *Nader v. Board of Elections*, 926 A.2d 199, 202, 399 Md. 681 (Md. Ct. App. 2007); *Bd. of Sup'rs Of Montgomery County v. Tallant*, 32 S.E. 479, 481, 96 Va. 723 (Va. 1899).

Due to the pre-*Jesinoski* precedent within this Circuit and elsewhere that judicially modified the "unequivocal terms" of the statute, 135 S. Ct. at *5, TILA has "become a broad shield for lenders in spite of Congress' manifest goal of ensuring that consumers receive an effective rescission right against both original and assignee lenders." *Keiran v. Home Capital, Inc.*, 720 F.3d 721, 731-735 (8th Cir. 2013) (Murphy, J., concurring in part and dissenting in part). It is time to put an end to that "perversion of Congressional intent," *In re Saint Peter's School*, 16 BR 404, 411 (Bankr. S.D.N.Y. 1982). "'[C]ourts in their effort to insure a just result should not forget that the TILA 'was passed primarily to aid the unsophisticated consumer,' *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir.1980), and that 'courts have consistently recognized that the act is intended to balance scales thought to be weighed in favor of lenders and is thus to be liberally construed in the favor of borrowers.' *Bizier v. Globe Financial Services, Inc.*, 654 F.2d 1, 3 (1st Cir.1981) (cases cited therein)." *Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504 (E.D. Pa., 1985).

---

congressional goal in TILA was to make "the rescission process a private one, worked out between creditor and debtor without the intervention of the courts." *Belini v. Wash. Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005). TILA's legislative history also confirms that rescission should ideally be a nonjudicial matter worked out between the parties. *See*, *e.g.*, S. Rep. 96–368, 96th Cong., 1st Sess. 1979; 1980 U.S.C.C.A.N. 236, 264. Congress' placing the initial obligation on the lender evidences "a clear intent that an ideal rescission would occur without judicial intervention." *Keiran v. Home Capital, Inc.*, 720 F.3d 721, 731-735 (8th Cir. 2013) (Murphy, J., concurring in part and dissenting in part).

BANA also argues that "Plaintiffs' Complaint fails to show that they are entitled to the remedy of rescission." Mem. at 7-8. This again misses the mark. Plaintiff are not seeking "the remedy of rescission" – in this case rescission is **not a consequence of judicial action, but a consequence o statutory law**. See 15 U.S.C. § 1635(b) ("[w]hen an obligor exercises his right to rescind . . ., any security interest . . . becomes void"); *Jesinoski*, 135 S. Ct. at *7 ("a borrower need only provide written notice to a lender in order to exercise his right to rescind" and then "§1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction"). The only remedy the Csokas are requesting is to compel BANA and John Doe to perform their statutory obligations triggered by the Csokas' now effected rescission (or to enter an order placing Plaintiffs in the same position as if the Defendants had complied with their statutory obligations) and to award them damages for Defendants' TILA violations. Compl. ¶¶ ¶ 41. These are causes of action and remedies that TILA specifically contemplates and provides for. *See* 15 U.S.C. § 1635(b) (imposing statutory obligations on lenders) and § 1640(a) (creating a private cause of action for statutory violations and providing that "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title . . . is liable") . As the court in *Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255 (3rd Cir. 2013) aptly put it,

> [w]hen an obligor exercises his right to rescind as defined in § 1635(a)—that is, as Regulation Z states, when he notifies the creditor by mail, telegram, or other means of written communication that he is rescinding—he is free of any liability for payments, the security interest "becomes void," and the creditor incurs an obligation to return money or property given. As with § 1635(a), there is no mention of filing a suit at law or equity. Rather, § 1635(b) states that the creditor must return money or property "[w]ithin 20 days after receipt of a notice of rescission"—not within twenty days of a court order stating that the obligor is entitled to rescind.

*Sherzer*, 707 F.3d at 259.

## V. To the extent that *Gilbert* conflicts with TILA's plain meaning and *Jesinoski*, it is no longer good law.

BANA relies on the Fourth Circuit's decision in *Gilbert v. Residential Funding LLC*, 678 F.3d 271 (4th Cir. N.C. 2012) to argue that "to complete rescission and void the contract, more is required." Mem. at 6 (quoting *Gilbert*, 678 F.3d at 277). To the extent that this proposition conflicts with *Jesinoski* and the "unequivocal terms" of Section 1635, it has been overruled by *Jesinoski* and cannot be relied upon as existing law.

First, *Gilbert* talks about "void[ing] a contract" rather than voiding the security interest given as part of that contract. In this respect, *Gilbert* can be read standing only for the proposition that "more is required" to avoid the underlying promissory note rather than the deed of trust (the security interest), which becomes void nonjudicially and without a court order pursuant to §1635(b). Second, even if *Gilbert* is indeed as sweeping as BANA suggests, it has been overruled by *Jesinoski* to the extent that it reads into TILA a requirement not supported by the text of the statute in violation of well-established rules of statutory construction and bounds of judicial power.

Specifically, *Jesinoski* holds that §1635 is "unequivocal" and "clear." *See* Jesinoski at *4 ("Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised") and at *7 (referring to the "clear import of §1635(a)"). It is an elementary rule of statutory construction that courts begin, as they must, with the plain meaning of the statute. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U. S. 1, 6 (2000) (in turn quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241 (1989), in turn quoting *Caminetti v. United States*, 242 U. S. 470, 485 (1917)). "The starting point for any issue of statutory interpretation . . . is the language of the statute itself." *United States v. Bly*, 510 F.3d 453, 460

(4th Cir.2007). The U.S. Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations and internal quotation marks omitted).

To the extent that *Gilbert* again attempts to read into the statute a requirement unsupported by its text, it violates the separation of powers, usurps congressional function, and engages in judicial legislation. *See*, *e.g.*, *Boseman v. Jarrell*, 704 S.E.2d 494, 364 N.C. 537 (N.C. 2010) ("[where] the language of a statute is clear and unambiguous, . . . the courts . . . are <u>without power</u> to interpolate, or superimpose, provisions and limitations not contained therein") (emphasis added).

Even prior to *Jesinoki's* clear admonition, a sister appellate court has already politely noted that *Gilbert* may be wrong if it purports to hold that more than a notification is required to rescind. The Third Circuit in *Sherzer* noted:

> We disagree, to some extent, with the Fourth Circuit's characterization of the rescission process. [T]he court in *Gilbert* distinguished between "the issue of whether a borrower has exercised her right to rescind" and "the issue of whether rescission has, in fact, been completed and the contract voided." . . . It also explained, [that] the actual rescission of the loan agreement occurs when the parties agree to rescission or when the court enters an order granting rescission. We find that the statutory language of § 1635(a) and (b) suggests that rescission occurs at the time the obligor exercises his right to rescission, and hold today that the contract is voided at the time valid notice is sent, pursuant to 15 U.S.C. § 1635(b).

*Sherzer*, 707 F.3d at 261 n.5. As *Jesinoski* has now conclusively established, the statute is clear and unambiguous that upon mailing the security interest is void. 15 U.S.C. § 1635(b). What remains to be done is solely the "unwinding of a such a unilaterally rescinded transaction," 135 S. Ct. at *7, since one party must be compelled to perform its obligations triggered by a nonjudicial

rescission. *Jesinoski* thus modifies *Gilbert* to say that, where a borrower files suit, the borrower does so not "to complete the rescission and void the contract," but "to unwind such a unilaterally rescinded transaction" because "rescission is effected when the borrower notifies." 135 S. Ct. at *5, *7; 15 U.S.C. §1635(b).

For the foregoing reasons, the Csokas rescinded the subject Loan on June 30, 2011, when they mailed their rescission notice to BANA. The Loan stands rescinded to this day, and the only matter left is to compel BANA and its principal John Doe to discharge their statutory obligations that were triggered by their receipt of the Csokas' rescission notice or to otherwise put the Csokas in the same position as if Defendants had discharged their obligations. This is exactly what the Complaint seeks to accomplish.[7]

## CONCLUSION

For the foregoing reasons, Plaintiffs John and Judith Csoka respectfully request that BANA's motion to dismiss be denied.

Respectfully submitted,

      */s/ Gregory Bryl*
Gregory Bryl, Esq.,VSB# 45225
BRYL LAW OFFICES
1629 K Street NW, Suite 300
Washington, DC 20006
202-360-4950
703-997-5925 fax

---

[7] BANA's argument regarding the Csokas' alleged failure to plead tender fails for the same reasons as their "more is required to rescind" argument: it relies on *pre-Jesinoski* cases that read into the statute a requirement is not there, contrary to the plain text of the statute, and, in any event, the Csokas did plead tender, *see* Compl. ¶¶ 24. Also, the Court can choose to resolve the tender issue of tender on summary judgment and to modify the procedures set forth in §1635(b) based on the evidence presented.

help@bryllaw.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on September 15, 2015, I caused a copy of the foregoing document, with exhibits, if any, to be sent via regular mail to the following:

N. Patrick Lee (VSB No. 78735)
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102
Telephone: 703.712.5132
Facsimile: 703.712.5252
E-mail: plee@mcguirewoods.com
*Attorney for Bank of America, N.A.*

                                          */s/ Gregory Bryl*
                                          Gregory Bryl, Esq.